JONES, Justice:
On December 11, 1969, there was delivered to the sheriff of Hinds County, Mississippi, a writ of garnishment reciting that Patricia Ann Patterson, a minor, etc. had on the eighteenth day of November, 1969, obtained a judgment in the Chancery Court of the First Judicial District of Hinds County, Mississippi, for the sum of $50,000 and all costs against Annell B. Adams. The sheriff was commanded to summon Nancy Ann Hutson of 4594 Ritchey Drive, Jackson, Mississippi, to appear in said court on January 12, 1970, to answer said writ of garnishment. On January 2, 1970, the garnishee answered stating that she was not sure whether or not she was indebted to the Adams because what she owed was on a conveyance of certain property which conveyance had been attacked as a fraud on the creditors of Seth B. Adams and Annell B. Adams. Said case was pending in the Supreme Court. If said conveyance was determined to be valid, then, “She” is indebted in the sum of $1,200. However, Mrs. Adams claimed that said money was exempt since it represented the balance due on the purchase price of the homestead. Mrs. Adams’ husband was not summoned *14 but joined with his wife Annell B. Adams in filing an affidavit in which it was claimed that said sum of $1,200 was exempt as the balance due on the purchase price of their homestead.
On December 11, 1968, Mr. and Mrs. Adams purchased other property. This deed was filed in the chancery court clerk’s office on December 12, 1968. She testified that they had lived at the new address since about December 18, when they moved there. That it had been her permanent home since they moved in. She stated that, when they bought the new place, they intended for it to be their permanent home. Mrs. Adams did not know the date that Mrs. Hutson moved into the old home but she knew they sold it December 31. Mrs. Adams said that they moved into the new property a few days after they bought it— a week or more. It was stipulated that the testimony of Mr. Adams would be essentially the same as that of Mrs. Adams.
Mrs. Hutson identified the deed to her to the house on Ritchey Drive, which deed was dated December 31, 1968. She said she paid $1,300 cash and owed a balance of $1,-200 which had not been paid. She also assumed the mortgage at First Federal Savings and Loan Association. She testified that she moved into the house during the' month of January and that she had applied for homestead exemption for the year 1969 on this property. She testified further that she had lived on that property since she purchased it.
Thus we have a case where a man and wife, for a number of years, had been occupying certain property as their homestead. On December 11, 1968, they purchased other property on West Capitol Street with the present idea of moving there and making it their permanent home and on or about December 18 moved into that property. Section 328, Mississippi Code 1942 Annotated (1956) provides under what conditions one may cease to reside on his homestead and not constitute an abandonment. It reads:
Whenever the debtor shall cease to reside on his homestead, it shall be liable to his debts, unless his removal be temporary, by reason of some casualty or necessity, and with the purpose of speedily reoccupying it as soon as the cause of his absence can be removed.
There was no purpose or reason for the move to be temporary; there was no casualty or necessity; and there was no purpose of speedily or ever reoccupying the old home. They first purchased new property with the intention to live there permanently and make it their homestead. The old homestead lay abandoned from the time they moved (about the 18th of December) until it was occupied by Mrs. Hut-son who bought it on December 31. Mrs. Adams’ claim is that the $1,200 was the proceeds of the sale of their homestead and therefore exempt. Section 307 [Tenth (b)] Mississippi Code 1942 Annotated (Supp.1968) provides that the proceeds of the sale of exempt property, real or personal, are exempt. Section 317, Mississippi Code 1942 Annotated (1956) provides for homestead exemption and says that: “Every citizen of this state * * * shall be entitled to hold exempt from seizure or sale, under execution or attachment, the land and buildings owned and occupied as a residence by him or her * * (emphasis added). Section 329, Mississippi Code 1942 Annotated (1956) provides that exempt property may be disposed of by the owner and shall not by disposal become liable to the debts of the owner.
In this case the Adams had purchased new property, vacated the old homestead, and moved into the new property. The removal was approximately two weeks before the sale of their old property. The statute exempts the proceeds of the sale of exempt property. However, in order to obtain this exemption, such proceeds must come from the sale of property which, at the time of sale, is actually a homestead meeting the requirements of the statute. Our Court has said there is no abandonment of a homestead unless it is clear *15 that the exemptionist moved from the homestead with the intention of not returning. Jackson v. Coleman, 115 Miss. 535, 76 So. 545 (1917). It is clear in this case that the exemptionist did not move from this homestead with the intention of returning. In fact, Mrs. Adams testified, and it was stipulated that Mr. Adams’ testimony would be essentially the same; that they bought the new property for a home and with the idea that it would be their permanent home and they actually moved there around December 18. The fact that two weeks later they sold the old place corroborates her statement that they had no intention of returning to the prior homestead.
In Wright v. Wright, 160 Miss. 235, 134 So. 197 (1931), it was held that evidence that the decedent had formerly lived on the land but had ceased to do so for several months before his death was held insufficient to establish the homestead.
In Moore v. Bradford, 70 Miss. 70, 11 So. 630 (1892), it was held by this Court that ceasing to reside on a homestead renders it liable for debts, unless the removal be temporary, by reason of casualty or necessity, and with the purpose of speedily reoccupying as soon as the cause is removed, and that both the intent to. speedily reoccupy and the cause of removal' (casualty or necessity) must exist to protect the homestead. If there is no sufficient cause of removal, proof of intent to reoccupy is immaterial.
In De Bardeleben Coal Corporation v. Parker, 164 Miss. 728, 144 So. 474 (1932); suggestion of error overruled, 164 Miss. 728, 145 So. 341 (1933), it was held:
At the time the exempt homestead was conveyed it was occupied by the exemp-tionist, and the judgment creditor had no rights affected by such conveyance. A judgment lien does not apply to an exempt homestead, and under the law of this state the exemptionist can convey his homestead unaffected by enrolled judgments. * * * As the homestead was occupied at the time of the conveyance as a homestead, the judgment lien did not extend to it, and when the occupant moved away from the homestead it had already been conveyed, and title vested in the grantee of the deed. (emphasis added). 164 Miss, at 736-737, 145 So. at 341.
We note this statement of the Court held that, in order for the property not be subject to a judgment lien, it must be the homestead at the time of the sale.
In Davis v. Lammons, 246 Miss. 624, 151 So.2d 907 (1963), the proceeds of the sale by Lammons of his home were held to be exempt. In that case, however, Lam-mons had sold his home in Jackson while it was homestead and while he was living there. After he sold his homestead, he went to Rankin County and purchased other property. He did not purchase the Rankin County property, move over there and occupy that property as his homestead before he sold the property in Jackson. At the time of the sale of the Jackson property, the Jackson property was his homestead.
The learned chancellor below was in error when he held that the proceeds of the sale of this property were exempt.
It is said in Howell v. General Contract Corporation, 229 Miss. 687, 700-701, 91 So. 2d 831, 835-836 (1957):
But Mrs. Howell urges that, even though nothing was paid for the deed, the property constituted the homestead and Howell had the legal right to convey it to her, to the extent of the homestead exemption of $5,000, even though both parties had the intent to defraud Howell’s creditors. In this contention we think appellant is correct. The evidence is all to the effect that on December 20, 1954, when the deed was executed by Bill Howell to the appellant, the property constituted the homestead of the parties. They and their three children were residing there. They had so occu *16 pied the property for a number of years. Howell did not go to Shreveport until January 1955. His wife and children continued to occupy the home. He came back to Cleveland from Shreveport a number of times. Mrs. Howell testified at the trial that she and the children moved to Shreveport some five or six weeks before the trial. Mr. and Mrs. Howell obtained homestead tax exemption on the Cleveland home for the year 1955. No new home had been acquired by Mr. Howell when this deed was executed. While Mr. and Mrs. Howell had an agreement December 15, 1954, that they would live apart but not obtain a divorce, they seem to have shortly thereafter changed their intentions and continued to live together as man and wife, and were doing that in Shreveport when this cause was tried. Both Mr. and Mrs. Howell signed the agreement to sell the Cleveland property to Mrs. Norman. We think it is clear that on December 20, 1954, the date Billy Howell made the deed to Mrs. Howell, the Cleveland property constituted their homestead. Billy Howell had the right to convey to his wife the extent and value of that homestead regardless of his intention toward his creditors. Section 329, said Miss. Code, provides: “The exempt property, real or personal, disposed of by the owner, shall not by disposal become liable to the debts of the owner; and any debtor leaving this state may take with him his personal property which is exempt from execution.” The value of the homestead exemption was $5,000. Section 317, 1954 Cumulative Supp. to Miss. Code 1942 Annotated. It follows that Mrs. Howell, upon receipt of the deed from Mr. Howell, was vested with the value of the homestead exemption. This result, however, raises another question. The chancellor rendered a personal decree against Mrs. Howell for $2,165, balance of the purchase price of an automobile, for which Mrs. Howell had executed a purchase contract and a promissory note, which papers had been bought by and transferred to the complainant, this amount to be credited with the net proceeds of the sale of the automobile.
See also Grantham v. Ralle, 248 Miss. 364, 158 So.2d 719 (1963).
There is a question presented here that was not raised in the lower court. It is claimed that since the property was deeded to Adams and wife as joint-tenants that he had a half interest therein and therefore one-half of the $1,200 should come to him. We are unable to pass upon this matter because, first, as stated, it was not raised in the lower court; second, Mr. Adams made his ■ appearance in the lower court but made no claim to any part of the balance due; third, neither the note nor the deed of trust is in evidence. We cannot tell whether this note for $1,200 is payable to Mrs. Adams or to both of them.
For these' reasons, we are reversing the case and directing judgment to be entered for the appellant. The case is remanded to the lower court solely for determination of the amount due.
Reversed and judgment directed for the appellant, and remanded for ascertainment of amount due.
GILLESPIE, P. J., and RODGERS, BRADY and INZER, JJ., concur.